UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| KARLA EDSON, | ) |
| Plaintiff, | ) ) ) |
| v. | ) Case No. 1:15-cv-00861-TWP-MJD ) |
| DREYER & REINBOLD, INC., | ) ) |
| Defendant. | ) |

**ENTRY OVERRULNG DEFENDANT'S OBJECTION AND
ADOPTING THE MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION**

Before the Court is Defendant Dreyer & Reinbold, Inc.'s ("DRI") Objections to Report and Recommendation (Filing No. 57), objecting to the Magistrate Judge's recommended disposition of DRI's Motion for Summary Judgment. Plaintiff Karla Edson ("Edson") filed an Amended Complaint against DRI, asserting that the termination of her employment with DRI violated the Family and Medical Leave Act, 29 U.S.C. § 2601 *et seq.* ("FMLA"), and the Americans with Disabilities Act, 42 U.S.C. § 12101 *et seq.* (Filing No. 15.) On May 5, 2016, DRI filed a Motion for Summary Judgment, contending that Edson's claims fail as a matter of law and no genuine issue of material fact exists. (Filing No. 36.) On December 13, 2016, Magistrate Judge Mark J. Dinsmore filed a Report and Recommendation denying DRI's Motion for Summary Judgment. (Filing No. 55.) DRI timely filed its Objections to Report and Recommendation, asserting that the Magistrate Judge erred. (Filing No. 57.) For the following reasons, the Court **OVERRULES** DRI's Objections and **ADOPTS** the Magistrate Judge's Report and Recommendation.

## I. BACKGROUND

DRI is a car dealership that sells BMW, Infiniti, Mini, Subaru and Volkswagen vehicles. Edson worked for DRI's Greenwood, Indiana, location for more than nine years. The Greenwood

dealership has four separate service drives, one dedicated to each of the four car brands. Beginning April 4, 2006, Edson held the position of Appointment Coordinator for the Volkswagen and Subaru service drives. James Kizer ("Kizer"), the dealership's Service Manager, supervised Edson.

In March 2015, Kizer planned to eliminate Edson's position and create two service greeter positions: one for the Volkswagen drive and the other for the Subaru drive. The service greeters' duties entailed scheduling appointments, greeting customers, arranging for alternate transportation for customers, and serving as support staff to the service advisors. Kizer initially intended to transition Edson into one of the new service greeter positions. However, Joe Bradshaw, a third party contractor hired to service DRI's telephone system, informed Edson that she was being moved to the Volkswagen Service Drive. Edson, who previously worked in the Volkswagen service drive, stated that she would quit if transferred to that specific drive. Edson repeated the same sentiments to Leo Vandenbosch ("Vandenbosch"), Kizer's assistant manager.

On April 2, 2015, Kizer transferred Stephanie Bowman ("Bowman") to the Subaru service drive and on April 14, 2015, he interviewed Julia Denham ("Denham") for a service greeter position. On Thursday, April 16, 2015, Edson suffered a stroke at work. The following day, Kizer hired Denham for the Volkswagen service drive position. Edson returned to work the following Monday, but suffered difficulty walking, balancing and speaking. Edson was required by her physician, to undergo physical therapy. Upon returning to work, Edson provided Kizer with a schedule of her physical therapy appointments, which required her to leave early on Wednesdays. Edson was also approved for intermittent leave due to her serious health condition under FMLA. Kizer was not receptive to Edson's missing work and questioned how long the appointments would take and whether Edson could schedule the appointments during her lunch hour or after work.

2

([Filing No. 42-1 at 16](#).) On April 23, 2015, Edson spoke with Brian Gauker ("Gauker"), DRI's General Manager, about her therapy schedule. Gauker remarked: "Well, you know, the owner would want us to be . . . compassionate in these situations but we still have to run a business . . . you're going to have all these other employees that are going, well, how come she only has to work 40 hours a week and I can't just work 40 hours a week." ([Filing No. 38-1 at 27](#).)

On May 11, 2015, approximately three weeks after her stroke, Edson advised Kizer that she would need to use a "scooter" at work due to her disability and difficulty walking. She described the scooter as a walker with wheels. ([Filing No. 42-1 at 16](#).) Kizer asked on two occasions about the appearance of the scooter and its arrival because he worried that the scooter would not fit the company's image. *Id.* at 18. Two days later, Edson arrived at work with the scooter. Later that morning, Kizer asked Edson to meet with him and Rita Kahn, the office manager. Kizer then informed Edson that DRI restructured the staffing of its service drives and eliminated her position as Appointment Coordinator for both the Volkswagen and Subaru drives. In response, Edson stated: "Wait. So you mean to tell me that after nine years of faithful service to this company, that you have no other place that you can put me?" Kizer replied: "Well, we already filled the position on the Volkswagen drive and the Subaru drive." Kizer continued by stating: "And now"— while gesturing at Edson's scooter. *Id.* at 21. Following the termination meeting, Edson collected her personal belongings and left the dealership.

On August 19, 2015, Edson filed an Amended Complaint against DRI, asserting discrimination and retaliation claims pursuant to the Family and Medical Leave Act, 29 U.S.C. § 2601 *et seq.*, and the Americans with Disabilities Act, 42 U.S.C. § 12101 *et seq*. ([Filing No. 15](#).) On May 5, 2016, DRI filed a Motion for Summary Judgment, contending that Edson's claims fail as a matter of law and no genuine issue of material fact exists because Kizer planned to terminate

Edson prior to Edson suffering a stroke. ([Filing No. 36](#).) On December 13, 2016, the Magistrate Judge entered his Report and Recommendation denying DRI's Motion for Summary Judgment, concluding that a reasonable jury could find that DRI terminated Edson due to her disability. ([Filing No. 55](#).) The Magistrate Judge specifically found that: 1) Kizer's gesture at Edson's scooter when terminating Edson, 2) Kizer's and Gauker's statements regarding Edson's need for therapy, and 3) the timing of Edson's termination, collectively, are a sufficient basis which a reasonable jury could conclude that DRI terminated Edson for discriminatory reasons. DRI now objects to the Report and Recommendation, asserting that the Magistrate Judge erred by failing to include evidence of the events that occurred prior to Edson's stroke and finding pretext that Kizer lied about when and why he terminated Edson. ([Filing No. 57](#).)

## II. LEGAL STANDARD

"A district court may assign dispositive motions to a magistrate judge, in which case the magistrate judge may submit to the district judge only a report and recommended disposition, including any proposed findings of fact." *Schur v. L.A. Weight Loss Ctrs., Inc.,* 577 F.3d 752, 760 (7th Cir. 2009) (citing 28 U.S.C. § 636(b)(1)(B); Fed. R. Civ. P. 72(b)). "The magistrate judge's recommendation on a dispositive matter is not a final order, and the district judge makes the ultimate decision to adopt, reject, or modify it." *Schur,* 577 F.3d at 760 (citing 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b)(3)). After a magistrate judge makes a report and recommendation, either party may object within fourteen days. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b)(2). "A judge of the court shall make a *de novo* determination of those portions of the report or specified proposed findings or recommendations to which objection is made" with respect to dispositive motions. 28 U.S.C. § 636(b)(1). Further, a judge "may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge." *Id.*

## III. DISCUSSION

DRI objects to the Magistrate Judge's Report and Recommendation, asserting that the Magistrate Judge erred by ignoring undisputed evidence and finding pretext that Kizer lied regarding when and why he made his decision to terminate Edson.

### A. The Magistrate Considered the Entire Record

DRI argues that the Magistrate Judge erred in omitting crucial, undisputed facts from the "Background" section of the Report and Recommendation. DRI specifically contends that the Magistrate Judge failed to follow the summary judgment standard by excluding facts regarding Kizer's decision prior to Edson's stroke to eliminate Edson's position and to hire two service greeters for the Volkswagen and Subaru drives. DRI contends that Kizer initially intended to transition Edson into one of the new service greeter positions, but decided not to because Edson informed two people that she would quit before being sent to the Volkswagen drive. Under Federal Rule of Civil Procedure 56, summary judgment is appropriate only where there exists "no genuine issue as to any material facts and . . . the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56. In ruling on a motion for summary judgment, the court reviews "the record in the light most favorable to the non-moving party and draw[s] all reasonable inferences in that party's favor." *Zerante v. DeLuca*, 555 F.3d 582, 584 (7th Cir. 2009) (citation omitted). In doing so, however, the court considers the entire record. *Patel v. Allstate Ins. Co.,* 105 F.3d 365, 367 (7th Cir. 1997).

The Court agrees that certain undisputed actions taken by Kizer prior to Edson's stroke should have been included in the "Background" section, however, after reviewing the record, the Court finds that the Magistrate Judge did not err in omitting DRI's contention that Kizer decided to terminate Edson prior to her stroke. In response to DRI's Motion for Summary Judgment, Edson

5

disputed DRI's assertion that Kizer planned to terminate her prior to her stroke. *See Zerante*, 555 F.3d at 584. Edson specifically stated,

> despite [DRI's] claim that [] Edson's termination had been planned for some time before she had her stroke, […] Gauker… claims that he did not know she was being terminated until minutes prior to when it occurred. He claims that he discussed reorganization with [] Kizer prior to the time that [] Edson had her stroke, but had not discussed firing her.

([Filing No. 41 at 7](#)) (citations omitted). Edson further disputed DRI's contention by presenting evidence that on April 17, 2015, at the time DRI hired Denham and the day after Edson's stroke, Kizer planned to place Denham and Edson on the two drives. ([Filing No. 41 at 9](#); [Filing No. 42-5 at 5](#).)

The Court finds that the Magistrate Judge viewed the evidence as a whole and considered DRI's contention that Kizer planned to terminate Edson prior to her stroke, when ruling that a genuine issue of material fact exists regarding whether Edson's job elimination was a pretext for discrimination. ([Filing No. 55 at 10](#).) Accordingly, DRI's Motion on this issue is denied because the Magistrate Judge did not ignore important facts when issuing its Report and Recommendation denying DRI's Motion for Summary Judgment.

**B.      The Magistrate Judge did not Err in Concluding that Pretext Existed**

DRI also argues that the Magistrate Judge erred in concluding that Edson presented sufficient evidence, creating a genuine issue of material fact, regarding whether Edson's job elimination was a pretext for discrimination. Under the familiar burden-shifting framework, after a defendant articulates a legitimate, nondiscriminatory reason for its action, a plaintiff may defeat summary judgment by establishing that the defendant's reasons are pretextual. *Sublett v. John Wiley & Sons, Inc.,* 463 F.3d 731, 737 (7th Cir. 2006). Pretext means "a dishonest explanation, a lie rather than an oddity or an error." *Kulumani v. Blue Cross Blue Shield Ass'n*, 224 F.3d 681,

6

685 (7th Cir. 2000). Accordingly, the question is not whether the employer's explanation for its employment decision was "accurate, wise, or well-considered", but whether the employer's explanation was "honest". *Ptasznik v. St. Joseph Hosp.*, 464 F.3d 691, 696 (7th Cir. 2006). While the Court is not in the position to "sit as a superpersonnel department that will second guess an employer's business decision ... [the Court] need not abandon good reason and common sense in assessing an employer's actions." *Gordon v. United Airlines, Inc.*, 246 F.3d 878, 889 (7th Cir. 2001). To show that the employer's non-discriminatory explanations are not credible, the plaintiff must point to evidence that the employer's stated reasons are not the real reasons for the employer's action, have no grounding in fact, or are insufficient to warrant the employer's decision. *Id.*; *Boumehdi v. Plastag Holdings, LLC*, 489 F.3d 781, 792 (7th Cir. 2007) (noting that a plaintiff must identify such "weaknesses, implausibilities, inconsistencies, or contradictions" in the employer's asserted reasons that a reasonable person could find them not credible).

Edson filed an Amended Complaint contending that Kizer terminated her because she was disabled. Edson presented evidence of conversations with both Kizer and Gauker concerning her medical condition and need for time off. Edson testified that Kizer was not receptive to her missing work and Gauker was concerned that giving Edson time off would appear unfair to others. Edson also testified that, approximately three weeks after her stroke, she advised Kizer that she needed to use a "scooter" and Kizer asked on two occasions about the appearance of the scooter and its arrival. Edson contends that DRI was worried that the scooter would not fit the company's image because DRI strives to present a professional appearance and Gauker encourages employees to maintain that image. (Filing No. 42-1 at 23.) Edson also points to the timing of her termination— the first day she brought to scooter to work—as evidence of discrimination.

7

DRI argues that Kizer initially considered Edson for one of the two new service greeter positions, but made the decision to terminate Edson prior to her stroke when learning that Edson told other employees she would quit before going to the Volkswagen drive. The Magistrate Judge concluded that Edson presented sufficient evidence to contradict DRI's assertion that it planned to terminate Edson prior to her stroke because: 1) the "restructuring" plan eliminated only Edson's job, and did so less than a month after her stroke; 2) there are no documents outlining the restructuring plan, or confirming its existence in any way; 3) Gauker discussed reorganization with Kizer prior to the time that Edson had her stroke, but Gauker was unaware that the restructuring plan would result in the elimination of Edson's job; and 4) it is undisputed that Edson was a good employee who did not have any discipline on her record, but Kizer eliminated Edson from consideration for one of the service greeter positions based upon second-hand information from other employees that she was not interested in transferring to the Volkswagen drive. The Magistrate Judge concluded, that when viewing the evidence as a whole, a reasonable factfinder could find DRI's reason was "phony." ([Filing No. 55 at 10](Filing No. 55 at 10).)

In its Objection to the Magistrate Judge's Report and Recommendation, DRI argues that the evidence does not create a genuine issue of material fact, and again argues that the Magistrate Judge did not review the entire record when concluding that a reasonable jury could find that DRI's decision was pretextual. DRI relies on *Johnson-Carter* when contending that the restructuring plan, eliminating only Edson's job, does not reveal that Kizer's reason for terminating Edson is false because prior to the transition there was no one else with Edson's position. *Johnson-Carter v. B.D.O. Seidman, LLP*, 169 F. Supp. 2d 924, 948-49 (N.D. Ill. 2001) (holding plaintiff failed to proffer sufficient evidence that defendant's reason for terminating plaintiff was pretextual where plaintiff failed to show that other similarly situated employees were treated more favorably). DRI

8

next argues that Seventh Circuit precedent establishes that a business' failure to write down a restructuring plan to phase out a specific position is not evidence of pretext. *See Hague v. Thompson Distribution Co.,* 436 F.3d 816, 827 (7th Cir. 2006) (holding a company's failure to document performance problems did not create an inference of pretext). DRI contends that Kizer's testimony confirms its plan to terminate Edson predated her stroke, because Kizer assigned Bowman to the Subaru drive and interviewed Denham for the Volkswagen drive two days prior to Edson's stroke. DRI also argues that Gauker's lack of awareness of Kizer's plan to terminate Edson prior to her stroke is not evidence of pretext. DRI presents evidence that employees are hired and terminated without Gauker's knowledge all the time. ([Filing No. 57 at 11](#).) DRI lastly asserts that Edson failed to submit evidence that calls into doubt Kizer's decision to terminate Edson after learning that Edson stated that she would quit if transferred to the Volkswagen drive.

After reviewing the record, the Court finds that the Magistrate Judge did not err when concluding that Edson presented sufficient evidence to contradict DRI's assertion that it planned to terminate Edson prior to her stroke. The Court agrees that DRI was not obligated to provide a written restructuring plan outlining its intention to phase out Edson's job only; however, Edson submitted sufficient evidence to call into doubt DRI's contention that Kizer planned to terminate Edson prior to her stroke. In particular, Edson presented Vandenbosch's testimony that on April 17, 2015, at the time that DRI hired Denham and the day after Edson's stroke, Kizer planned to place Denham and Edson on the two drives. ([Filing No. 41 at 9](#); [Filing No. 42-5 at 5](#).) Additionally, when viewing the record as a whole, a reasonable jury could find: 1) Kizer's gesture at Edson's scooter when terminating her, 2) Kizer's and Gauker's unreceptiveness regarding Edson's need for therapy, and 3) the timing of Edson's termination, amounts to pretext for discrimination. Accordingly, DRI's Motion on this issue is **denied**.

## IV. CONCLUSION

For the foregoing reasons, the Magistrate Judge's Report and Recommendation ([Filing No. 55](#)) is **ADOPTED** and Dreyer & Reinbold's Objection ([Filing No. 57](#)) is **OVERRULED**. Defendants Motion for Summary Judgment ([Filing No. 36](#)) is **DENIED** and the matter remains scheduled for Final Pretrial Conference on **May 24, 2017** and Trial on **June 19, 2017**.

**SO ORDERED.**

Date: 2/1/2017

TANYA WALTON PRATT, JUDGE
United States District Court
Southern District of Indiana

DISTRIBUTION:

Jeffrey B. Halbert
BOSE MCKINNEY & EVANS, LLP
jhalbert@boselaw.com

Philip R. Zimmerly
BOSE MCKINNEY & EVANS, LLP
pzimmerly@boselaw.com

Daniel LaPointe Kent
LAPOINTE LAW FIRM P.C.
dkent@lapointelawfirm.com

Mary Jane Lapointe
LAPOINTE LAW FIRM PC
maryj@lapointelawfirm.com