UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | | |
|---|---|---|
| KARLA EDSON, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 1:15-cv-00861-TWP-MJD |
| | ) | |
| DREYER & REINBOLD, INC., | ) | |
| | ) | |
| Defendant. | ) | |

## ENTRY ON MOTIONS IN *LIMINE*

This matter is before the Court on Plaintiff Karla Edson's ("Edson") Motions in *Limine* (Filing No. 75; Filing No. 76), and Defendant Dreyer & Reinbold, Inc.'s ("DRI") Motion in *Limine* (Filing No. 69), to exclude certain evidence and testimony at trial. In her Motions in *Limine*, Edson seeks to prohibit DRI from introducing certain evidence or eliciting evidence regarding two topics, and in its Motion in *Limine*, DRI asks the Court to exclude evidence that falls within five specific categories. For the following reasons, Edson's Motions in *Limine* are **denied,** and DRI's Motion in *Limine* is **granted in part and denied in part**.

## I. BACKGROUND

DRI is a car dealership that sells BMW, Infiniti, Mini, Subaru and Volkswagen vehicles. Edson worked for DRI's Greenwood, Indiana location for more than nine years. The Greenwood dealership has four separate service drives, one dedicated to each of the four car brands. Since April 4, 2006, Edson held the position of Appointment Coordinator for the Volkswagen and Subaru service drives. James Kizer ("Kizer"), the dealership's Service Manager, supervised Edson.

In March 2015, Kizer planned to eliminate Edson's position and create two service greeter positions: one for the Volkswagen drive and the other for the Subaru drive. The service greeters' duties entailed scheduling appointments, greeting customers, arranging for alternate transportation for customers, and serving as support staff to the service advisors. Kizer initially intended to transition Edson into one of the new service greeter positions. However, Joe Bradshaw, a third party contractor hired to service DRI's telephone system, informed Edson that she was being moved to the Volkswagen Service Drive. Edson, who previously worked in the Volkswagen service drive, stated that she would quit if transferred to that specific drive. Edson repeated the same sentiments to Leo Vandenbosch, Kizer's assistant manager.

On April 2, 2015, Kizer transferred Stephanie Bowman ("Bowman") to the Subaru service drive and on April 14, 2015, he interviewed Julia Denham ("Denham") for a service greeter position. On Thursday, April 16, 2015, Edson suffered a stroke at work. The following day, Kizer hired Denham for the Volkswagen service drive position. Edson returned to work the following Monday, but suffered difficulty walking, balancing and speaking. Edson's physician required her to undergo physical therapy. Upon returning to work, Edson provided Kizer with a schedule of her physical therapy appointments, which required her to leave early on Wednesdays. Edson was also approved for intermittent leave due to her serious health condition under the Family and Medical Leave Act ("FMLA"). Kizer was not receptive to Edson's missing work and questioned how long the appointments would take and whether Edson could schedule the appointments during her lunch hour or after work. ([Filing No. 42-1 at 16](Filing No. 42-1 at 16).) On April 23, 2015, Edson spoke with Brian Gauker ("Gauker"), DRI's General Manager, about her therapy schedule. Gauker remarked: "Well, you know, the owner would want us to be . . . compassionate in these situations but we still have to run a business . . . you're going to have all these other employees that are going, well, how

come she only has to work 40 hours a week and I can't just work 40 hours a week." ([Filing No. 38-1 at 27](#).)

On May 11, 2015, approximately three weeks after her stroke, Edson advised Kizer that she would need to use a "scooter" at work due to her disability and difficulty walking. She described the scooter as a walker with wheels. ([Filing No. 42-1 at 16](#).) Kizer asked on two occasions about the appearance of the scooter and its arrival because he worried that the scooter would not fit the company's image. *Id.* at 18. Two days later, Edson arrived at work with the scooter. Later that morning, Kizer asked Edson to meet with him and Rita Kahn, the office manager. Kizer then informed Edson that DRI restructured the staffing of its service drives and eliminated her position as Appointment Coordinator for both the Volkswagen and Subaru drives. In response, Edson stated: "Wait. So you mean to tell me that after nine years of faithful service to this company, that you have no other place that you can put me?" Kizer replied: "Well, we already filled the position on the Volkswagen drive and the Subaru drive." Kizer continued by stating: "And now"— while gesturing at Edson's scooter. *Id.* at 21. Following the termination meeting, Edson collected her personal belongings and left the dealership.

On August 19, 2015, Edson filed an Amended Complaint against DRI, asserting discrimination and retaliation claims pursuant to FMLA, 29 U.S.C. § 2601 *et seq.*, and the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12101 *et seq.* ([Filing No. 15](#).) Edson seeks compensatory, liquidated and punitive damages. *Id.* at 5.

On May 5, 2016, DRI filed a Motion for Summary Judgment, contending that Edson's claims fail as a matter of law and no genuine issue of material fact exists because Kizer planned to terminate Edson prior to her suffering a stroke. ([Filing No. 36](#).) On December 13, 2016, the Magistrate Judge entered his Report and Recommendation denying DRI's Motion for Summary

3

Judgment, concluding a reasonable jury could find that DRI terminated Edson due to her disability. ([Filing No. 55](#).) Specifically, the Magistrate Judge found: 1) Kizer's gesture at Edson's scooter when terminating Edson, 2) Kizer's and Gauker's statements regarding Edson's need for therapy, and 3) the timing of Edson's termination, collectively, are a sufficient basis which a reasonable jury could conclude that DRI terminated Edson for discriminatory reasons.

DRI objected to the Report and Recommendation but, on February 1, 2017, the Court overruled DRI's objections and adopted the Magistrate Judge's Report and Recommendation. ([Filing No. 59](#).) Accordingly, both Edson's FMLA and ADA claims remain for trial.

## II. LEGAL STANDARD

"[J]udges have broad discretion in ruling on evidentiary questions during trial or before on motions in *limine*." *Jenkins v. Chrysler Motors Corp.*, 316 F.3d 663, 664 (7th Cir. 2002). The Court excludes evidence on a motion in *limine* only if the evidence clearly is not admissible for any purpose. *See Hawthorne Partners v. AT&T Technologies, Inc.*, 831 F. Supp. 1398, 1400 (N.D. Ill. 1993). Unless evidence meets this exacting standard, evidentiary rulings must be deferred until trial so questions of foundation, relevancy, and prejudice may be resolved in context. *Id.* at 1400–01. Moreover, denial of a motion in *limine* does not necessarily mean that all evidence contemplated by the motion is admissible; rather, it only means that, at the pretrial stage, the court is unable to determine whether the evidence should be excluded. *Id.* at 1401.

## III. DISCUSSION

Each party has requested an order in *limine* to prohibit the introduction of certain testimony and evidence at trial. The Court will address the parties' Motions in turn.

4

A.  **Edson's Motions in *Limine***

   1.  **Any reference to untimely documents produced in discovery (Filing No. 75).**

Edson asks the Court to exclude from evidence certain documents that were not timely produced during discovery, specifically documents Bates-stamped DRI_000434 through DRI_000440. Under Rule 37:

> [i]f a party fails to provide information or identify a witness as required by Rule 26(a) or (e), the party is not allowed to use that information or witness to supply evidence on a motion, at a hearing, or at a trial, unless the failure was substantially justified or is harmless. In addition to or instead of this sanction, the court, on motion and after giving an opportunity to be heard:
>
> > (A) may order payment of the reasonable expenses, including attorney's fees, caused by the failure;
>
> > (B) may inform the jury of the party's failure; and
>
> > (C) may impose other appropriate sanctions, including any of the orders listed in Rule 37(b)(2)(A)(i)-(vi).

Fed. R. Civ. P. 37(c). Edson notes that the Court set April 4, 2016 as the discovery deadline for non-expert witness and liability discovery. DRI, however, produced the above documents two weeks after the deadline, on April 18, 2016, after Edson took depositions of DRI's witnesses and despite the documents being available to DRI since at least May 2015. The documents in question concern the hiring of Julia Denham to fill the service greeter position on April 17, 2015. Specifically, Bates-stamped DRI_000434 through DRI_000440 are the Disclosure of Intent to Obtain a Consumer Report, a Consent Form for drug screening, a copy of Denham's driver record, the passing results of her drug screen, and the payroll notice for Denham's first day of work. (Filing No. 38-9 at 3-8.)

In response, DRI argues that it timely produced the documents in accordance with Rule 26, which requires a party to "supplement…its disclosure…in a timely manner if the party learns that

in some material respect the disclosure…is incomplete or incorrect, and if the additional or corrective information has not otherwise been made known to the other parties during the discovery process or in writing." Fed. R. Civ. P. 26(e). DRI contends that it initially did not plan to use the documents Bates-stamped DRI_000434 through DRI_000440, but produced the documents after learning through Edson's depositions of DRI's witnesses that the documents are relevant to the merits of the case.

DRI also argues, even if the supplemental disclosure was untimely, imposing a Rule 37 sanction is not warranted because any violation of Rule 26 was harmless. When determining whether to impose the sanction under Rule 37, courts consider the following factors: "(1) the prejudice or surprise to the party against whom the evidence is offered; (2) the ability of the party to cure the prejudice; (3) the likelihood of disruption to the trial; and (4) the bad faith or willfulness involved in not disclosing the evidence at an earlier date." *Eli Lilly & Co. v. Teva Parenteral Medicines, Inc.*, No. 1:10-CV-01376-TWP, 2015 WL 735724, at *3 (S.D. Ind. Feb. 20, 2015).

DRI contends the documents do not unfairly prejudice or surprise Edson because Edson discussed the substance of the information included in the documents, namely the transfer of Bowman and the hiring of Denham, during Edson's depositions of DRI's witnesses. DRI also asserts, on May 5, 2015, it included the documents Bates-stamped DRI_000435 through DRI_000440 in its summary judgment record and Edson did not object to the documents at that time. (*See* Filing No. 38-9 at 3-8); *see also Friedel v. City of Madison*, 832 F.2d 965, 971 n.4 (7th Cir. 1987) (noting "[t]his court has held that where a party fails to move to strike a defective affidavit or particular portions thereof, the party has waived any objections based on its defects and the court *may* consider the affidavit") (citations omitted). Regarding the third factor, DRI argues the admission of the documents will not disrupt the trial, but will assist the factfinder in

understanding the timing of personnel decisions relating to Bowman and Denham. DRI lastly contends that it did not act in bad faith or with willfulness when failing to produce the documents earlier.

The Court agrees with DRI that admission of these documents is not likely to disrupt the trial, and there is no evidence of bad faith. Edson has been aware of DRI's reliance on the documents since May 5, 2016, and Edson has presented nothing to show it would be prejudiced by admission of these exhibits. Edson's Motion *in Limine* is **denied** as to this issue.

2. **Any reference to Edson's use of FMLA leave in 2010 (Filing No. 76).**

Relying on Federal Rule of Evidence 403, Edson asks the Court to exclude from evidence all testimony and exhibits relating to her use of FMLA leave in 2010 because such evidence is irrelevant and unduly prejudicial. Edson contends that the 2010 FMLA leave is irrelevant because it is too remote and different from the 2015 FMLA leave at issue in this case. The 2010 FMLA leave resulted from a hysterectomy, lasted for a continuous period of six weeks, and Edson did not have to discuss her time off with Kizer or Gauker. To the contrary, the 2015 FMLA leave resulted from Edson suffering a stroke, lasted only a few hours on occasional days, and Edson discussed the leave with Kizer and Gauker.

In response, DRI argues evidence regarding Edson's 2010 FMLA leave is relevant to DRI's good faith defense, demonstrates that DRI does not terminate employees for taking FMLA leave, and establishes that Edson knew about FMLA leave and was familiar with the process.

DRI has asserted a relevant bases for introduction of this evidence and the issue is not confusing. The Court declines at this stage of the litigation to omit testimony regarding prior FMLA leave. For this reason, the Court **denies** Edson's Motion in *Limine* on this issue.

**B.     DRI's Motion in *Limine* (Filing No. 69)**

DRI requests an order in *limine* on five topics. Edson filed a Response in Opposition to only two of DRI's five motions. ([Filing No. 79](#).)

**1.     Any reference to Equal Employment Opportunity Commission ("EEOC") charges, grievances, or investigations.**

DRI asks the Court to exclude any reference to EEOC charges, grievances, and administrative or legal claims from Edson and any other former or current DRI employee. DRI points to Rules 402, 403, 408 and 801 when arguing that such evidence is irrelevant, unduly prejudicial, serves to confuse the jury, and contains inadmissible hearsay. Edson does not oppose this request in *limine*. Accordingly, the Court **grants** DRI's Motion in *Limine* regarding this evidence.

**2.     Any testimony from Edson or her non-supervisory co-workers regarding Edson's work performance.**

DRI moves to exclude any testimony from Edson or other non-supervisory co-workers regarding Edson's work performance because such evidence is irrelevant, unduly prejudicial, and amounts to inadmissible hearsay, pointing to Rules 401, 402, 403, 801, and 802. *See Ost v. W. Suburban Travelers Limousine, Inc.*, 88 F.3d 435, 441 (7th Cir. 1996) (noting, at the summary judgment stage, "[i]t is well settled…that a plaintiff's own opinions about her work performance or qualifications do not sufficiently cast doubt on the legitimacy of her employer's proffered reasons for its employment actions") (citations omitted).

In response, Edson argues that DRI's reliance on *Ost* is misplaced because the decision in that case regards a summary judgment motion. *See Ost*, 88 F.3d at 441. Edson also contends that testimony regarding her work performance is relevant because it goes to the heart of this case and

rebuts Kizer's reasons for terminating Edson. The Court agrees and **denies** this section of DRI's Motion in *Limine*.

    3.    **Any testimony from a lay witness regarding the cause of any medical, psychological or psychiatric condition suffered by Edson.**

DRI also asks the Court to exclude any testimony from a lay witness regarding Edson's medical, psychological or psychiatric condition because such testimony requires an expert witness. *See Frazier v. Indiana Dep't of Labor*, No. IP 01-198-C-TK, 2003 WL 21254424, at *4 (S.D. Ind. Mar. 17, 2003) ("matters regarding the causation of any of the Plaintiff's medical, psychological or psychiatric conditions require expert testimony"). DRI agrees, however, Edson may testify about her personal knowledge regarding her mental anguish or emotional distress. Edson does not oppose this request in *limine*. Accordingly, the Court **grants** DRI's Motion in *Limine* regarding this evidence.

    4.    **Any expert testimony.**

DRI next moves the Court to preclude Edson from submitting expert testimony at trial because Edson has not disclosed any expert testimony pursuant to Federal Rule of Civil Procedure 26(a)(2). *See Holmes v. Sood*, No. 02 C 7266, 2006 WL 1988716, at *8 (N.D. Ill. July 11, 2006) (barring an expert from testifying about causation, prognosis, or the future impact of Plaintiff's condition, because the expert failed to serve an expert report as required by Rule 26(a)(2)). Edson does not oppose this request in *limine*. Accordingly, the Court **grants** DRI's Motion in *Limine* regarding this evidence.

    5.    **Any reference to DRI's financial condition.**

DRI lastly asks the Court to exclude any evidence or testimony regarding its financial condition in the presence of the jury because such evidence is irrelevant and would unfairly prejudice the jury, pointing to Rules 401 and 402. *See State Farm Mut. Auto. Ins. Co. v. Campbell*,

538 U.S. 408, 417, 123 S. Ct. 1513, 1520, 155 L. Ed. 2d 585 (2003) ("Jury instructions typically leave the jury with wide discretion in choosing amounts, and the presentation of evidence of a defendant's net worth creates the potential that juries will use their verdicts to express biases against big businesses, particularly those without strong local presences") (citations omitted); *Yund v. Covington Foods, Inc.*, 193 F.R.D. 582, 586 (S.D. Ind. 2000) ("the Court of Appeals for the Seventh Circuit has written that evidence of a defendant's wealth should be irrelevant to the assessment of punitive damages"). DRI also contends that Edson will not present sufficient evidence in support of her request for punitive damages and, therefore, the Court should not instruct the jury on the issue of punitive damages and any reference to DRI's financial condition is irrelevant to the issues before the Court. *See Koblosh v. Adelsick*, No. 95 C 5209, 1997 WL 311956, at *2 (N.D. Ill. June 5, 1997) ("the plaintiff may not introduce [the employer's financial] evidence until the court determines that [plaintiff] can make a colorable claim for punitive damages").

In response, Edson notes that the Court is not bound by the holding in *Koblosh*. Edson also contends that evidence relating to DRI's financial condition is clearly relevant to Edson's punitive damages claim, pointing to Seventh Circuit Pattern Civil Jury Instruction 3.13, which lists "Defendant's financial condition" as a possible factor when determining the amount of punitive damages the jury should award.

The Court **grants** DRI's Motion in *Limine* on this issue. Punitive damages are available as a possible remedy in this ADA action. In addition, evidence of DRI's financial condition may be admissible if Edson introduces evidence that DRI engaged in the discriminatory conduct with malice or with reckless indifference to her federally protected rights. The Court concludes, however, that the relevancy and admissibility of evidence regarding the financial condition of DRI

is best determined during trial. Evidence concerning financial information has the potential to distract the jury from the essential issues of the case. See *Pivot Point Int'l, Inc., v. Charlene Products, Inc.,* 932 F. Supp. 220, 223 (N.D. Ill. 1996). With this in mind, Edson must approach and request a hearing outside the presence of the jury prior to eliciting any testimony or evidence regarding DRI's financial wealth. If evidence of punitive damages has been presented to the jury, the Court will likely allow testimony regarding DRI's financial information. The Court notes that DRI's desire to preclude any punitive damage award and dissuade improper use of financial information is addressed in Instruction 3.13, and can be advanced through a further limiting instruction to the jury or by stipulation.

## IV. CONCLUSION

For the foregoing reasons, Edson's Motions in *Limine* ([Filing No. 75](Filing No. 75); [Filing No. 76](Filing No. 76)) are **DENIED**, and DRI's Motion in *Limine* ([Filing No. 69](Filing No. 69)) is **GRANTED in part and DENIED in part**. An order in *limine* is not a final, appealable order. During the course of the trial, if the parties believe that evidence being offered is inadmissible or irrelevant, counsel may approach the bench and request a hearing outside the presence of the jury.

**SO ORDERED.**

Date: 5/23/2017

TANYA WALTON PRATT, JUDGE
United States District Court
Southern District of Indiana

DISTRIBUTION:

Daniel LaPointe Kent
LAPOINTE LAW FIRM P.C.
dkent@lapointelawfirm.com

Mary Jane Lapointe
LAPOINTE LAW FIRM PC
maryj@lapointelawfirm.com

Jeffrey B. Halbert
BOSE MCKINNEY & EVANS, LLP
jhalbert@boselaw.com

Philip R. Zimmerly
BOSE MCKINNEY & EVANS, LLP
pzimmerly@boselaw.com